Good morning, Your Honors. May it please the Court, Jessica Smith-Bobadilla for Petitioner Giancarlo Ordonez-Garay. I'd like to reserve five minutes of my time for rebuttal, please. Okay, you keep your eye on the clock and we'll try to help. Okay, thank you. The petitioner in this case is a citizen of Venezuela and a former member of the Venezuelan military. Petitioner was forcibly conscripted into the military along with his half-brother. While completing this service, petitioner was harmed and subjected to degrading treatment and torture. Petitioner also opposed Venezuela's war with Colombia. Several members of his family, since the date that this case was last considered by an immigration judge, have also fled the country, his native country, where instability, repression of free speech, and prolonged detention of political opposition continue to this day. Your Honors, there are two important issues in this case. The first is whether petitioner made a false claim to United States citizenship, barring him from adjustment of status to the United States. We submit that petitioner made no such statement that was equivalent to a false claim to United States citizenship. The statement he did make indicating that he was from Puerto Rico at a border in 2000, which the government insists was equivalent to a false claim, was also timely retracted. This Court also previously remanded this case. The second question involves the immigration judge and, in turn, the Board of Immigration Appeals handling of the asylum issue on remand. This Court specifically noted in its decision that it was not considering or commenting on the asylum claim in the previous remand. And petitioner, through counsel, petitioned you have a number of claims. Why don't we zero in on your arguments? Why are you entitled to any relief here? Petitioner did not make a false claim to the United States citizenship, barring him from adjustment of status to the United States citizenship. He made the statement at primary inspection, and it's not until secondary inspection, and the Board says in its opinion that's too late. He retracted timely and secondary. I mean, he retracted immediately and secondary. In its opinion, that was just untimely. And they seem to say that as a matter of law. I think the President of this Court and the Board suggest that it's too late when it's already been discovered and the immigration agents know or have discovered evidence. But that was not the case in this case. The documents from the Board in this case indicate that he retracted and admitted freely he was from Venezuela before there was any such findings. So that's embedded in that statement are two points. One, that if you looked at the evidence, it appears as though he recanted before they discovered the documentation. But the Board said when he got to secondary inspection and he recanted, it was too late. It was just too late. Essentially what the Board is saying, he had to have done it at primary inspection. Right. And on remand, the immigration judge... There's about a two-hour gap between the time that he's referred from primary inspection to secondary inspection. Right. So I would argue that it's not too late. There was, there is precedent saying that if the immigration agents have not discovered, lano scenarios, I believe is the case, that if they have not discovered or if somebody was admitting something before there is a discovery, it can be considered to be a withdrawal of that statement or in turn a timely retraction. Even if you were successful in determining, in prevailing upon us to conclude that it wasn't too late, what do you do? You get, he gets to the hearing with the first lawyer and she concedes that he made a false statement. Right. So what, what do we do with that? Well, we have pursued Lozada claims against both former attorneys. We have filed bar complaints, which are in the record and they have responded. I do not believe it was a strategic decision. I believe it was made without full thought, both to the complexity of a claim that someone is from Puerto Rico. Let me ask you this. She submitted her letter and she told her whole story, the lawyer that is, the first lawyer. And she says, ah, you know, I interviewed him in detail in Spanish and whatnot. And, you know. And he says the opposite in his declaration. Right. That she had really no She does not raise in that letter the possibility of a recantation defense. Right. That she considered it and rejected it. And that seems to be critical here. It is critical, Your Honor. So, so, so just one last question on this line. If you were, if you were to prevail on both these claims of ineffective assistance of counsel, what does that get you? If I were to prevail on both claims of ineffective assistance of counsel, we could revisit the pleadings in this case. You then could ask to have. A contested hearing. But, well, you could ask to withdraw that, that admission or. Correct, Your Honor. Or it'd be non, it wouldn't be binding and you could then withdraw it. Correct. And, because they were ineffective. And then you go back down and what happens then? If we had a contested hearing, we would be able to prove, I believe, that he did not have intent to state that he was a United States citizen. He did not have knowledge at the time he made the statement that Puerto Ricans are generally United States citizens. And his testimony during the proceedings previously indicated that he did not have that knowledge. So, we would be able to prove, hopefully, that the main bar to his admissibility, he is married to a U.S. citizen and has an approved petition. The main obstacle in his path to being admitted to the United States as a lawful permanent resident would be removed. So, part of the argument as to why the uncle claimed that they were Puerto Rico and then he and his brother go along with it, I gather, is that, well, our Venezuelan accents are consistent with Puerto Rican accents rather than Mexican or some other Spanish-speaking country. And that somehow it seemed that if you're Puerto Rican, you get in. But that then requires him to say, and I didn't, I didn't know that getting in because you're Puerto Rican meant getting in because you're a citizen. That sounds a little improbable, but he's going to have to make some version of that argument. Correct. And I think, you know, I mean, there's something in the record about this, but recent events related to Puerto Rico prove that even a majority or a large percentage of the U.S. population do not necessarily know that Puerto Ricans are U.S. citizens. So, I think a young Venezuelan, you know, gentleman might not know that Puerto Ricans, being other Latin Americans in his view at the time, perhaps with the amount of education that he had at the time, I don't think it's unreasonable to assume that he's not telling the truth about that. So, if you're unsuccessful on this line of attack, I gather you also have asylum claims and cat claims. Yes, Your Honor. So, those... Do you want to say anything about those? Yes. So, those relate to his... He did oppose the war with Colombia. Venezuela was engaged in a war with Colombia when he was forcibly conscripted. He resisted the conscription. He resisted the activities. He was subjected to treatment that under precedent rises to the level of past persecution, although the immigration judge and the board found it was not. The board said it was forced conscription. I think that because he opposed a war, if he was forced to engage in actions that he considered to violate human decency, which someone who is a conscious objector to war would consider that killing other people in a war that they believe is unjust would violate human decency, then I believe the precedent of that court would... This court would allow an military conscription on that basis. But you also have an alternative basis for... Yes. So, since... A group. Yes, Your Honor. Deserters. Could you clarify, Your Honor? Didn't you have a group claim as well based on... A particular social group claim. A social group based on those who have deserted the army? Right. Yeah. I was not the attorney at the time most of that testimony went forward, but there was a claim that was related to deserters. And I believe there is a distinction for former members of military that have deserted and that that would be a cognizable social group. Or at least there's a plausible argument under the case laws it's evolved. Yes, Your Honor. And we're also questioning the immigration judge and in turn the board's treatment of the new evidence we submitted upon remand. We do not believe that this court or the board limited the scope and that we believe that under the precedent matter of MD that the immigration judge should have considered all evidence in the record before rendering a final decision as to petitioner's removal. So, wrapping up... Reserve some of my time. So, Your Honors, the Department of Justice and Department of Homeland Security have had multiple opportunities to examine these prior decisions related to the false claim issue and the asylum claim. In each instance, DHS, the Department of Justice and their various subdivisions have failed to deliver justice and due process to petitioner. In the meantime, he continues to raise three United States citizen children and his wife is also a United States citizen. We just seek a remand so that these errors can be addressed and that hopefully petitioner can have his stay in court and adjust status to that of a lawful permanent resident. Thank you. I'll reserve the rest of my time. Thank you. So, you'll save some time. Yes, thank you. May it please the Court, Victor Lawrence for the Attorney General. I'll restructure my argument given the order of the presentation of my opponent and I'll start with the false claim. The record evidence is clear here that the individual said he was from Puerto Rico. The reason why people say they're from Puerto Rico when they go to a port of inspection is to try to gain entry as a United States citizen. Well, wait a minute. You said to try to gain entry. I get that point. As a United States citizen, you state that as a fact. I think that's that he had falsely misrepresented himself as a United States citizen and the issue is whether that's manifestly contrary to law that the agency found that this was a false claim to citizenship. Does it matter and I'm just going to assume things. I'm not asking you to concede. Sure. Would it matter if he subjectively believed that being from Puerto Rico would get him into the United States but did not believe that that was a claim of U.S. citizenship? I would say no, it would not matter. Because why? Because he's not claiming in his own mind, he's not claiming citizenship. He's just claiming some other status that will get him in. He's using words that and any individual on the border would interpret to be a claim of United States citizenship. No, not any individual on the border because he's one individual on the border and my hypothetical says he doesn't need to see that as a claim of citizenship. Well, I'm referring to any individual being an immigration inspector. There you go. But we're talking about the world of people who come in and the world of people who may make such claims. I'm from Puerto Rico, not what an educated border inspector might know. Understood. So I want to repeat the question. This is really a question of law rather than a question of who knew what. I'm asking you to assume, I'm not concede, that he believed that being from Puerto Rico would get him into the United States, but he did not believe that that was a claim of U.S. citizenship. Now, is that a claim of U.S. citizenship within the meaning of the statute? I fully understand your hypothetical and the assumption you want me to make. And I would still say that that is a claim of U.S. citizenship that the agency appropriately determined that whether it was his mindset or not, that he understood what that means. So this is not a specific intent statute that is to say you do not have to be intending to claim U.S. citizenship. You can just say words that would be tantamount to U.S. citizenship, even though in your own mind you're not claiming U.S. citizenship. I mean, that's a rather startling reading of the statute. Well, that's contrary. This is also contrary to the recantation doctrine as well. I'm sorry? That seems contrary. Your statement seems contrary to the recantation doctrine as well. Well, I don't think so. But Your Honor brings up a good point. The very fact that he recanted, the fact that he was from Puerto Rico, shows that he had knowledge that he was saying something falsely. Well, not necessarily. He's just saying that I'm from Venezuela, where he truly was from. I mean, I don't see the inconsistency there. Well, okay. So if somebody comes to the border and obviously they're coming to the border because they want admission to the country. So the inspector asks, where are you from? The guy says, I'm from Puerto Rico. The guy says, okay. The inspector says, okay. Those words ring a bell. That means that this person is a U.S. citizenship. But for whatever reason, the inspector didn't believe that the person was truly from Puerto Rico. So they take him to secondary. In secondary, they start to go through his belongings. At that point, and I think way too late, at that point, the individual says, I'm actually from Venezuela. That's not what the record says. The record says, by then, he had admitted he was a Venezuelan citizen. It does not say then. That is to say, at the time he's going through the belongings, he had already admitted Venezuelan citizenship. And that's clearly set out in the briefs. You've got to read the language. No, sir. I just don't understand the distinction you're making. It's ordinary English language. If you say then, that means at that point he does it. If you say by then, that means he's already done it. Okay. And you're saying that our briefs say by then? Well, the report says by then. Okay. Well, regardless, so you're in primary inspection, and then you're sent to a secondary inspection. So whether it was somewhere in between there, before he actually gets to the secondary inspection, the normal person knows that, hey, I'm being investigated further because they're not letting me in yet. They're bringing me to the second area. I'm totally on board with you up to that point. The only thing I'm objecting to is your statement that when the agent starts to go through the luggage or the materials in the trunk, the personal effects, at that point he says, I'm Venezuelan. That's not what the record says. Okay. And... Record says he said it before. When before, I don't know. Okay. There is a page site that, if I may, Your Honor, that it would take... If I could find it, I can't find it right now, but I may issue a 28-J letter to show you. Let me just... So putting that aside for just a moment, but... So the BIA seems to say, as I read their decision, they say, by the time the respondent failed primary inspection and was referred to secondary, the opportunity to timely recant had passed. I read that as them saying he had to have recanted at primary. As a matter... As a rule, as a matter of law. Right. Doing it at secondary is just automatically too late. That's one interpretation of the... Well, I mean... Well... That's what it says. Okay. Well, okay. But... It's too... The opportunity to timely recant had passed, meaning that... Forget it. Whatever you say, it's just not timely. Right. Whatever happened. It's secondary. If you're going to recant, you have to do it at primary inspection. So here, the agency is relying or we're relying on the Ninth Circuit President of Valdez-Munoz, which says that when a person recants, and I know this is slightly different, but when a person recants, only when confronted with evidence of the prevarication, this ability to recant is not available. So we're talking about a slight difference in time. You know, Your Honor's point is well taken that it's not as if the inspector said, hey, this is your Venezuelan passport. You're not Puerto Rican. And then he says, okay, you're right, I'm not Puerto Rican. That... No, those facts would be better for us. But it's practically the same thing. The guy says he's from Puerto Rico. He's saying that falsely knowing he's from Venezuela. Why is he saying he's from Puerto Rico? He's saying it so he can be admitted to the country. Well, you know, this is interesting because at this... But, you know, remember, he got remanded back down to the IJ. And the second IJ, when he was dealing with the second counsel, you know, said, I'm interested in hearing your story about recanting. Well, now... Okay. Yes. You're telling us that he said, I'm from Puerto Rico. That doesn't make him a citizen of the U.S. That's not a... I could be from there. And that wouldn't tell you anything about citizenship. Or I can be from any place in the world I choose to come from. That doesn't make me a citizen of the places I come from. Okay. Is it in this record that he said he was born there? I follow your point, Your Honor. And I don't believe that's in the record. You don't believe what is correct? No, I don't believe that it is in the record where he says he was born in Puerto Rico. So all we have is his assertion then that he was from Puerto Rico. But he was also from Mexico. He was from a lot of places that he'd been, right? Well, I don't see it that way because when I travel around the world... Well, I know, but we're asked to say that by saying I'm from Puerto Rico, it's a representation that I'm a U.S. citizen. Right. Because... Because when you're at... If he were born there, that it would mean anything, right? Well, he could have been born in California and whether he said he's from Puerto Rico, he could have been born in California and he could have said he was from Puerto Rico because he lived the majority of his life in Puerto Rico. But the point is, what he was doing was he was trying to make a claim of U.S. citizenship. And the agency's determination that that's what he was trying to do is not manifested contrary to law. What bothers me is, and this goes back to the IAC part, is that he never had any lawyer who was willing to make any argument on his behalf. We have the first lawyer that just concedes it without sort of thinking about the consequences, or at least not telling us that she's thinking seriously about the consequences of doing that. Yes, it makes him eligible. It does not disable him. I didn't make him ineligible for asylum and withholding and CAT. I get that. But I'm sorry to tell you that's a really weak claim. And the only thing that really could matter to him in his real circumstance is probably going to be something like adjustment of status. And that's what she gives away. And then the second lawyer, quote, standing on principle, the principle totally eludes me, but standing on principle refuses to make any argument whatsoever. There are lots of arguments that could have been made that may well have been rejected below, but they might have been accepted. You know, we're kind of running through the arguments, but we're doing them without any assistance from either of his two lawyers. But one could say that in any case, that there are lots of arguments that could have been made below that may have had some change in the situation. But the reality is that, so it's not fair to say, well, in this case, there's ineffective assistance of counsel because these lawyers didn't come up with the same arguments that a panel of the Ninth Circuit is thinking of right now. They're pretty straightforward arguments, and they may or may not be winners, but they just jump out at you. But the point is, there's no prejudice by the attorney's failure to make that argument because the agency independently determined that he made a false claim of citizenship. They made the determination in the absence of the argument and the absence of evidence. Or rather, with the amount of evidence they had, they didn't have any other arguments or any evidence that might have been presented. That's true, but we were talking about seasoned attorneys, a seasoned immigration judge, and a seasoned board of immigration appeals who are looking at these facts. Well, I think everybody was seasoned except his two lawyers. Well, you know, one can quibble with people's strategic decisions, but I would suggest it's not ineffective assistance of counsel. It doesn't rise to that point. If you read her declaration, she didn't even think. I mean, there's nothing. She did respond to his complaint and everything and offered her declaration, the first lawyer, that is. And she says she interviewed him and whatnot, and, you know, fair enough. But there's nothing in there. But critical in this case was his recantation, and there's nothing in there that she thought about it, ruled it out, considered it. And that's absolutely critical here. The recantation issue? Yes. Well, so again, it's almost as if we're talking— The second lawyer to go forward. But, Your Honor, if you're saying that the recantation is so critical, what you're also saying, and I hate to put words in Your Honor's mouth, but what you're also saying is that it's critical because he did make a false claim. No, I'm not— Well, I know you didn't say that, but that's one reason why somebody would consider the recantation to be critical. So, but it is the government's position. I realize my time is short, so I just want to get into a few topics here. We do think that there was a false claim by saying he's from Puerto Rico. That was the only purpose of him saying that was to try to get into the United States because he knew that by doing so, he was telling them he was a U.S. citizen. That is the only reason why people do that. I think the court can take judicial notice of that. You don't say you're from Puerto Rico when you're at the border because you have some ulterior motive, other than to try to get into the United States as a citizen. So, I think the court should find that there is a false claim here. With respect to whether there was any persecution in the past, we would submit that the court has valid precedent, a prior precedent that people who are conscripted into the army and desert, that these are not claims of persecution. What about the social group claim? Well, you know, when you said that to my opposing counsel, it kind of surprised me because when I read the board's opinion, I thought he was talking all about on account of his political opinion. He was saying that he was a conscientious objector. But he didn't say that when he went into the army. He just said, you know, I don't want to do this. I wish I didn't have to do this. And the fact that he deserted, I don't think is enough to show that he had a political opinion. So, I don't think the record compels the conclusion that military service was inflicted upon him on account of his political opinion. What about, he has a cat claim as well. He has a cat claim. But here again, we would say that the, we don't believe that the evidence is such that it's more likely than not that he would be tortured upon his removal to Venezuela. You know, what happened to him in the past was really quite outrageous. With respect to being in the military? Yeah, when they, you know, they put him in the dungeon, extremely hot, completely dark, very small box filled with human feces, urine, no food or water. I, Your Honor, I don't believe that, that, that in itself rises to the level. That was just, there's multiple incidents of. There were some. And, you know, I don't mean to be flip about it at all. And I hope this doesn't sound this way. But my brother was a U.S. Marine. And he told me stories of things that he did at Parris Island that, that, you know, made my head spin as well. But this is, this is, you know, yes, it's bad stuff that this guy went through. But does it rise to the level of persecution is another story. And was it inflicted upon him on account of a protected ground is particularly something that I don't think the record compels. You don't need that for, I didn't think you need a protected ground. Not for torture, not for torture. That's correct. That's correct. But we would submit that that was not previous torture that he endured. It was rough treatment, but not, not torture. And upon his return, we don't believe that he would be tortured with the acquiescence or of, of the government or. How about the fact that conditions have changed down in Veterans Way? Where does that come in? Well, are you referring to very recent changes or are you referring to the changes that he brought up in the motion to reopen? I'm just asking the question. Sure. Well, with respect to recent changes, of course, he has the, the ability if he wanted to, to file another motion to reopen with, even though it would be number barred. But there have been changes in Venezuela of, of recent, certainly after the death of Chavez, et cetera. And particularly in very recent times. But he filed his motion. I mean, we don't have a travel ban against folks coming from. Okay. So, so this may be perfect reason for him to, may be perfect reason for him to file another motion to reopen with the board. But right now, he has a motion to reopen on file. But that was filed in 2011. And it's the agency's position that there has, of course, under motion to reopen law, which are, of course, are heavily disfavored. And there's a heavy burden on the petitioner. He has to show that the, there were material changes from the time of his asylum hearing in 2004 to the time in 2011. And it's the government's position that it was not an abuse of discretion for the agency to find that there were not material changes, either with respect to the country conditions or his personal, personal circumstances. So we would think that the agency appropriately denied the motion to reopen. So I, I, I see I'm over my time. But unless the court has any other questions, we would respectfully submit that the court should deny this petition for review. Okay. Thank you. Thank you very much. Your Honor, so with respect to the motion to reopen that Respondents' Council has discussed, in fact, we could not fully get consideration of that because the immigration judge on remand decided that she did not have jurisdiction. She did comment in her written decision that she had looked at the evidence in the declaration that we had attached supplementing the asylum and related claims. But she made clear that she had not given full considerations and she believed she did not have jurisdiction. So this case, in terms of any testimony related to asylum, I believe has not really had the opportunity for anything to fully be considered in the record since 2005. And country conditions in Venezuela, as we all know, have seriously deteriorated further since 2005. In addition, in regard to the false claim issue, just rebutting quickly, the intent does matter. There is at least one district court case, which we cited in the opening brief, U.S. v. Martinez-Baez, where a foreign national made a claim that he was Puerto Rican, a statement he was Puerto Rican, and the district court ruled it was not enough because it was kind of a threadbare statement. It was not clear that he understood the legal conclusion that followed about U.S. citizenship. This court's decision in Carrune v. Gonzalez is also instructive. And like the petitioner in this case, the petitioner in that case was also asked a compound question backed by the agent trying to get an admission that they understood that they were making a false claim to citizenship. We submit in this case that he did not understand that at the time he said he was from Puerto Rico and that the record reflects that. Now, he affirmatively testified, did he not, that he was not at all political while he was? He testified that he did not discuss his political opposition to the war with Colombia with his superiors. He did say he resisted both the conscription and the activities and was punished for that. And that he did make a link, I believe, with his opposition to the war that the Venezuelan military was waging. But he said, if I go back, I may be more assertive and that may precipitate. Right. It's a kind of a strange position. Right. I think the country reports up to the point that we have country reports in the record bear that Venezuela recently has not had a free press since he's come here. He speaks English. He has been able to read free press sources in both English and Spanish. And that was a lot. He's developed further opinions and also affiliated with Venezuelans in exile, which is part of what we tried to submit, which was not considered by the immigration judge on remand, Your Honor. So we'd respectfully request that this honorable court grant the petition for review and remand this matter for consideration of all claims by the Board of Immigration Appeals. Thank you. Thank you. Both sides. Thank both sides for their arguments. Ordonez Garay versus Sessions submitted for decision. Thank you.
judges: Leavy, W. Fletcher, Paez